DUNKIN ET AL. *v*. LAFAYETTE LOAN AND TRUST COMPANY, RECEIVER, ET AL.

[No. 13,457. Filed December 19, 1929. Rehearing denied March 14, 1930. Transfer denied December 6, 1932.]

*Joseph B. Ross,* for appellants.

*James M. Butler, Henry Seyfried, Charles V. McAdams, Harry Schultz, Clyde H. Jones* and *D. M. Patrick,* for appellees.

McMAHAN, J.—The LaFayette Loan and Trust Company, as receiver of the LaFayette Hydraulic Gravel Company, filed its petition to sell the assets of the gravel company, including 208 acres of land which we will designate as the Dunkin farm. The petition alleged that Lydia Dunkin and Marion Dunkin, her husband, and F. Lee Dunkin were in possession of said land cultivating the same under a contract of some kind, the nature of which was unknown as to the receiver, and they were made defendants to answer to their interest in said real estate. The Fidelity Trust Company of Indianapolis was named as a defendant to answer to its interest in the assets of the gravel company, appeared and filed an intervening petition alleging that the gravel company had issued bonds in the sum of $50,000, and for the purpose of securing the payment thereof had executed its mortgage on all of its property and assets, including the Dunkin farm, to the trust company as trustee for the bondholders. This petition also alleged that the Dunkins were asserting some title to said land and asked that they be required to answer as to such interest. The Huntington National Bank of Columbus, Ohio, as trustee under another mortgage given by the gravel company to secure the payment of certain bonds, filed an intervening petition setting up its mortgage and named the Dunkins as defendants, and asked that they be required to answer as to their interest.

Lydia Dunkin, by way of intervening petition, alleged

that in June, 1916, she entered into a contract with the gravel company for the purchase of bonds of the company of the par value of $40,000; that the gravel company agreed to purchase the Dunkin farm consisting of 208 acres and to pay for the same by delivering to her bonds of the company of the par value of $40,000, and as evidence of said agreement, the company executed to her its note for $40,000; that for the purpose of furnishing security for said bond issue she executed a deed conveying the real estate to the gravel company; that she never delivered possession, but retained possession thereof, paying taxes thereon; that she held and possessed the same as owner; that the gravel company, without her knowledge or consent, placed said deed on record; that the gravel company entered into negotiations with the Fidelity Trust Company for the purpose of making the trust company trustee for the proposed bond issue, and for that purpose executed a mortgage to the trust company on all the real estate then owned by the gravel company; that said trust company had knowledge that bonds of said bond issue in the sum of $40,000 were to be delivered to her; that she had been paid nothing for her land; that the deed was not to be operative until the consideration therefor had been delivered to her; that the trust company perpetrated a fraud upon her in not delivering said bonds to her; that another mortgage had been executed by the gravel company to secure a bond issue of $250,000, but that the gravel company and the trustee in this last mortgage knew the land had never been paid for, and asking that she be decreed to have a first and prior lien on the 208 acres. About three months later she filed a second intervening petition in which she alleged that the deed to the gravel company was void because her husband did not join in the deed, and asked that her title to the land be quieted.

Marion Dunkin and Lydia Dunkin filed an answer under oath denying the execution by them of the deed to the gravel company for the land.

Lydia and Marion Dunkin died after the trial but before judgment, and their heirs were substituted as parties defendants after which the court found in favor of the receiver that the property should be sold; that the mortgage held by each of the trustees was valid; that the substituted defendants and intervenors, heirs of Lydia and Marion Dunkin, had no interest in the real estate and should recover nothing. Judgment followed the finding. The Dunkin heirs appeal and assign as error the overruling of their motion for a new trial, under which they contend the decision of the court is not sustained by sufficient evidence.

Lydia Dunkin and her son, F. Lee Dunkin, were stockholders of the LaFayette Hydraulic Gravel Company, the latter being president of the corporation. The former, in June, 1916, her husband joining, by warranty deed, conveyed the real estate to the gravel company. This conveyance was made with the understanding that the gravel company would, upon receipt of such conveyance, execute a mortgage on the real estate to the Fidelity Trust Company of Indianapolis, to secure an issue of bonds of the gravel company amounting to $50,000, $40,000 of such bonds to be given to Mrs. Dunkin in payment for the land. The deed conveying the land, after being signed and acknowledged by Mrs. Dunkin and her husband, was delivered to, and accepted by the grantee, and by it recorded. Bonds were thereafter issued for $50,000, secured by a mortgage to the trust company, and bonds of that issue amounting to $40,000 sent to Mrs. Dunkin by express, and the evidence is ample to show that she received them, although she testified to the contrary. The gravel company later issued other bonds and secured the same by mortgages

on its property including the land involved in this action. The gravel company was not a financial success. A receiver was appointed for it, and such receiver filed its petition to sell the assets of the gravel company, including the lands so conveyed to it by Mrs. Dunkin.

The evidence so amply sustains the decision of the court that we do not deem it necessary to extend this opinion for the purpose of reviewing the evidence. We are unable to understand how the court could have found otherwise than it did. An affidavit, signed by Mrs. Dunkin, in which she stated that she had executed and delivered the deed conveying the land to the gravel company, that she had conveyed all her interest to that company in fee simple, and that the purchase price of $40,000 had been paid, and a receipt for the bonds, signed by her, were introduced in evidence. This documentary evidence is supplemented and supported by oral evidence almost conclusive in character.

Affirmed.